### TILL BROTHERS *v.* WILLIAM D. REDUS.

1. PARTNERSHIP. *Surgeon's fee. Firm liability.*

   A partnership is liable for the professional services of a surgeon rendered, at the request of all the partners, to an employe of one of them, who had been injured while engaged in the separate business of his employer.

2. VERDICT. *Return of, sealed. Agreement of parties.*

   Where the parties agree to the return of a sealed verdict to the clerk of the court and to the separation of the jury thereupon, such a return of the verdict is substantially the same thing as its return into open court.

FROM the circuit court of Claiborne county.

HON. WILLIAM K. McLAURIN, Judge.

Redus, appellee, a surgeon, was plaintiff in the court below; Till Brothers, a partnership and the members of the firm, appellants, were defendants there. From a judgment in plaintiff's favor the defendants appealed to the supreme court. The facts are fully stated in the opinion of the court.

*John McC. Martin*, for appellants.

To constitute a contract between Till Brothers and Redus there must be some consideration moving from Redus to Till

Brothers.    A physician's right to compensation depends upon contract, express or implied.    This implied contract is, in the first instance, usually with the patient, or where one stands in such relation with the patient as to be liable for necessaries furnished him.    18 Am. & Eng. Enc. L. (1st ed.), 432, 433.

The following authorities show that appellants are not liable under the facts of this case:   *Guerard* v. *Jenkins*, 1 Strobh (S. C.), 171; *Smith* v. *Watson*, 14 Vt., 332; *Boyd* v. *Sappington*, 4 Watts. (Pa.), 247; *Shaw* v. *Graves*, 79 Me., 166.

In the case of *Williams* v. *Brickell*,, 37 Miss., 685, under the following facts, this court held that the defendant was not liable, to wit:   The defendant was part owner and superintendent of the Cooper's Wells hotel.    The yellow fever broke out there.    It became epidemic.    Under such circumstances, the defendant sent to a friend, in a neighboring town, a telegram in substance as follows:   "There are many cases of yellow fever at the Wells.    Send out a physician without fail this evening."    The person to whom the telegram was addressed showed it to plaintiff and requested him to go to the Wells, which the plaintiff did, and attended on the visitors and guests at the hotel.

The court, on the second day of the term, ordered an adjournment of the same to the twenty-fifth day of January, being the fourth day of the third week, and ordered the grand and petit juries dismissed.    This was because of the dangerous illness of the presiding judge.    Before he did this, the jury had returned a verdict in the case at bar.    It was a sealed verdict.    Counsel for both parties had agreed that a sealed verdict should be rendered.    Neither, however, agreed that it should be opened without reassembling the jury, and saving the right to each other to poll the jury, if desired.    By the adjournment of the court, the jury were permitted to disperse, and were not reassembled at the opening of the verdict, the verdict being thus opened without the consent of the appellants.

The rule as to right to poll jury, under the above recited

conditions, varies in different jurisdictions.   In civil cases some jurisdictions recognize the right to poll the jury.   It is, however, more frequently declared to rest within the discretion of the trial judge.   23 Am. & Eng. Enc. L. (1st ed.), 350.

The absence of the jury when the verdict was opened being by consent of the court, and the verdict having been sealed and delivered to the clerk, it is frankly admitted by appellants that there is much force in the idea that the absence of the jury and the right to poll same could not affect the verdict.   It is, however, submitted to the court.

*C. A. French,* for appellee.

It is contended by Till Brothers that they were not liable for this debt, because, as they say, it was the debt of another (the injured man), and they had not agreed in writing to pay it, under § 4225, code 1892, paragraph (*a*).   The question is, who was primarily liable?   If Judge Till was, and Redus rendered the service on his credit and looked to him for his pay, then Till Brothers were not liable.   But, on the contrary, if Dr. Redus looked to Till Brothers from the first, as he evidently did, and rendered the service on their credit, and charged them with the bill from the first, then the debt was theirs, and is not the debt of another, and does not come within the statute. *Wallace* v. *Wortham,* 25 Miss., 119; *Bloom* v. *McGrath,* 53 Miss., 249; *Hendricks* v. *Robinson,* 56 Miss., 694.   These cases fully announce the law.   The testimony of Dr. Redus shows that he did not render the services on the credit of the injured party, but on that of Till Brothers, and charged the service on his books to Till Brothers, and it was to them he first presented his bill, and never presented a bill to or ask any one else to pay the debt.

The testimony well warrants the verdict, predicated of the idea that both partners directed Dr. Redus to be called to render service to the injured man.

TERRAL, J., delivered the opinion of the court.

Louis and Charles Till, under the name of Till Brothers, operated a store in Claiborne county, and, near by, Louis Till operated a gin.   One of the laborers at the gin got caught in the saws of the gin and was badly lacerated thereby, so that amputation of his arm became necessary.   There were a good many people at the gin and at neighboring places of employment, and, the fearful accident becoming speedily known, a large crowd gathered at the gin where the accident occurred, and there was great excitement among them.   Dr. Redus, who had surgical instruments, was sent for, and amputated the arm of the laborer and treated him for some time, when he sued Till Brothers for $130, and recovered a verdict for $75, and judgment from which Till Brothers appeal.

Their contention is that they did not employ Redus.   On the part of Redus, as to his employment, a witness (Mr. Magruder) testified that he came to the gin immediately after the accident, and during the excitement arising from the accident, and, understanding that Dr. Redus was telephoned for, but that doubt was expressed whether he would come at the request of the person sent with the message, he (Magruder) asked Louis Till if he should telephone for Redus, and he replied, he wished he would; that, immediately, Charles Till came up and expressed an unwillingness to have Redus come, which Magruder hearing, he turned to them and asked again, " Who must I tell Redus has sent for him ? " and " both Mr. Louis and Charles Till says, ' Till Brothers; ' " upon which, he telephoned Redus that Till Brothers wanted him to attend the wounded man.

We think the evidence of Magruder offered a sufficient foundation for placing the claim of Redus before the jury, and that it supports a verdict in his behalf.

In Claiborne county a term of court may last three weeks, and the case was put to the jury on Monday of the first week, and was ready for submission to the jury at the close of the day, when, " by agreement of counsel on both sides, it was

ordered that the clerk receive a sealed verdict," and the court adjourned. The jury returned a sealed verdict to the clerk and dispersed, and, by reason of the sickness of the judge, immediately ensuing, court did not reconvene until the third week of the term, when the court directed a judgment to be entered upon the sealed verdict delivered to the clerk on the night of the first day of the term; and this action of the court is also alleged for error. In *Pierce* v. *Hasbrouck*, 49 Ill., 27, it is said: "The parties having agreed that the sealed verdict should be delivered to the clerk, and the jury separate, such delivery was substantially the same thing as its delivery in open court."

The consent of the parties justified, we think, the action of the court. "*Consensus tollit errorem.*"

*Affirmed.*