# Winter-Loeb Grocery Company *v.* Mutual Warehouse Co.

## *Trover.*

(Decided April 16, 1912.  Rehearing denied May 4, 1912.
58 South. 807.)

1. *Estoppel; Declaration; Lien.*—Where the defendant, before loaning money to the owner of certain personal property, claimed to be mortgaged to plaintiff, inquired of one of plaintiff's managers if plaintiff claimed any lien on the property, and relying on the manager's statement that plaintiff had no such claim, was thereby induced to advance the money on the mortgage, plaintiff was thereafter estopped to set up a claim under a prior mortgage held by it.

2. *Principal and Agent; Acts of Agent; Authority.*—Where one of plaintiff's managers acting within the apparent scope of his authority informed a defendant that plaintiff had no claim on certain personal property, and the defendant relying on such declaration, accepted a mortgage on the property to secure present advances, plaintiff was bound by the manager's act in giving such information, in the absence of knowledge on the part of the defendant that plaintiff's manager had no authority to give the information.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Action by Winter-Loeb Grocery Company against the Mutual Warehouse Company, in trover and conversion. Judgment for defendant and plaintiff appeals. Affirmed.

STEINER, CRUM & WEIL, for appellant. A prima facie case was made out by appellant.—*Bolling v. Kirby,* 90

Ala. 215; *Henderson v. Foy,* 96 Ala. 205. The question presented was whether or not, an estoppel was raised by the testimony of Mr. McNeel, as to a conversation had with him by Winter. The burden, of course, was on the defendant.—*Hall & Farley v. Henderson,* 126 Ala. 49. Under the evidence, the court was in error in deciding the issue in favor of the defendant.—*Joseph v. Seward,* 91 Ala. 597; *Wilcox v. Henderson,* 64 Ala. 535; *Harris v. Bell,* 27 Ala. 520. It does not appear that Winter was acting within the line and scope of his authority, so as to bind the plaintiff by his declaration. It affirmatively appears that he was only one of the managers and of necessity there were others, and the evidence does not disclose that Winter was the manager with authority to estop plantiff by such declarations.—*Johnson v. A. G. F. & M. Co.,* 90 Ala. 504; *Steele v. Alabama,* 21 Ala. 544; *Baird Lumber Co. v. Devlin,* 124. Ala. 245; *Allen v. Alston,* 147 Ala. 609; *Loan Ass'n. v. Smith,* 122 Ala. 502; *Bank v. O'Neal,* 128 Ala. 192; *Steiner & Lobman v. Land Co.,* 120 Ala. 128; *Sullivan v. L. & N.,* 128 Ala. 77; 146 U. S. 36; 39 N. E. 116; 2 Thomp. on Corp. sec. 1620, et seq.; *Troy G. Co. v. Potter,* 139 Ala. 360; *Simon & Son v. Johnson,* 105 Ala. 344. Where the truth is known to both parties, or both have equal means of knowledge, no estoppel arises.—10 Cyc. 741ffi 92 N. E. 213; Ewell on Estoppel 140. An estoppel must be certain.—*Railroad Co. v. Proctor,* 160 Ala. 450.

GOODWYN & MCINTYRE, for appellee. The finding will not be disturbed as it is supported by the evidence.—*Montgomery Lodge v. Massie,* 159 Ala. 437. This is a typical case of estoppel.—*Green v. McKissack,* 49 Ala. 163; *Talladega I. Co. v. Peacock,* 67 Ala. 253; *Eagle I. Co. v. Bugh,* 147 Ala. 613; 26 Cyc. 123; 10 Cyc. 923; *Ellis v. Sisson,* 96 Oll. 105; *Wallis v. Long,* 16 Ala. 738.

[Winter-Loeb Grocery Company v. Mutual Warehouse Co.]

PELHAM, J.—The three assignments of error in this case go to the conclusions of the trial judge on the evidence, and in rendering a judgment against the appellant and in favor of appellee in the court below. The suit is an action of trover, which was instituted in the trial court by the appellant against the appellee and was tried before the court without a jury, on a plea of the general issue and a special plea of estoppel. The trial court found from the facts adduced upon the trial that the plaintiff was estopped to claim the property as against the defendant and accordingly rendered judgment for defendant on the issue made under its plea of estoppel.

The plaintiff's title and claim to the property alleged to have been converted by the defendant and the plaintiff's right to recover in this action is based on its right to assert a claim under mortgages held by it and executed by one Battle, who subsequently gave the defendant a mortgage on the same property. The defendant took possession of the property and disposed of it under the subsequent mortgage held by it. No question is raised as to the priority of the mortgages; the mortgages given by Battle and held by plaintiff are conceded to have been given prior to the mortgage given by Battle to the defendant. It is not contended but that the plaintiff's testimony made out a prima facie case.

The principal controversy arises on the question of estoppel over the disputed fact of whether or not the defendant, before advancing Battle money on the property to be secured by mortgage, communicated by telephone with the plaintiff and inquired if it held a claim on the property and was informed by plaintiff that it did not. If it be true that the defendant made such inquiry and was informed by the plaintiff that it held no claim on the property and the defendant relied on this statement and

28 CA

was thereby induced to advance Battle the money on the security afforded by mortgaging the property, then the plaintiff would be estopped from setting up any claim under the prior mortgages held by it.—*Chancellor v. Law & Edmonds*, 148 Ala. 511, 41 South. 514; *Ashurst v. Ashurst*, 119 Ala. 219, 24 South. 760.

The court below, having the opportunity to see the witnesses and hear them testify—an advantage we cannot have—reached the conclusion that the defendant's secretary and treasurer, one McNeil, did have a conversation, as testified to by him, over the telephone, with one of the plaintiff's managers, one Winter, in which as testified by McNeil, Winter told him in substance and effect that the plaintiff, Winter-Loeb Grocery Company, held no claim whatever on the property in question of Battle, and that Battle could make a good paper so far as the Winter-Loeb Grocery Company was concerned. McNeil, if he did make this inquiry, was no doubt, as shown by the tendencies of the evidence, led to do so in view of the fact that Battle had approached the defendant for a loan or an advancement to enable him to conduct his farming operations for the current year of 1909, and had referred the defendant to the plaintiff as to his credit, etc. The defendant was also aware that Battle up to that time had been trading with and receiving advancements from the plaintiff with which to carry on his business. The tendency of the evidence goes to show that immediately after the conversation testified to by McNeil as having been had with Winter, probably later in the same day, the defendant did advance Battle a considerable sum of money, and took a mortgage on the property in question to secure the debt.

Under a careful consideration of all of the testimony set out in the bill of exceptions, we are led to the same conclusion on the issue made under the defendant's plea

of estoppel as that arrived at by the trial court in passing on the evidence in the trial had before it.

The weight of the evidence does not depend alone on the number of witnesses (*Ala. Gt. So. Ry. Co. v. Frazier*, 93 Ala. 45, 9 South. 303, 30 Am. St. Rep. 28), and while Winter positively denied the conversation over the telephone testified to by the witness McNeil, the witness Battle testified that one Loeb, an officer of the Winter-Loeb Grocery Company, the plaintiff, informed him (Battle) that the plaintiff would not be able to advance him for that year (1909) on account of bad collections, but that if he could get advances elsewhere it would release or waive its claim or mortgage on the personal property involved in this suit if Battle would continue to trade with the plaintiff, who also held a mortgage on valuable real estate consisting of the farm lands owned by Battle. The tendencies of the evidence show that Battle without delay after this conversation applied to the defendant for advances and offered to mortgage the property in question to secure the debt, and represented that the plaintiff would release its claim or mortgage on the property. This conversation testified to by Battle is denied by Loeb, and the conversation testified to by McNeil is denied by Winter; but the testimony of Battle and McNeil and the consequences shown to have immediately followed, whereby the defendant advanced Battle a large sum of money (about $2,400), with this property as security, carries with it a probability in the natural order of things that lends color to its reasonableness and a presumption to its truthfulness. The collateral facts seem to us to strongly bear out the conclusion reached by the trial judge that the conversation testified to by McNeil as having been had with Winter over the telephone did occur. It is not unreasonable to believe that the plaintiff, holding a mortgage on valuable

real estate, would release its claim on the personal property of Battle for the purpose of allowing him to obtain money for his farming operations for that year that plaintiff was unable, on account of bad collections, to advance, on a promise that he would continue to trade with the plaintiff, with the money thus secured, feeling that it was safe in the amount due it by Battle on account of the mortgage held by it on the land; while it is not a reasonable presumption to indulge that the defendant would advance Battle $2,400, or more, on property already incumbered by mortgage liens probably covering the full value of the property. In this connection, it is also shown that Battle did continue to trade with the Winter-Loeb Grocery Company, using the money, or a part of it, secured through the advancement made by the defendant in purchasing goods during the year 1909 from the plaintiff, and this has some persuasive force in lending credit to the evidence of Battle that is denied by Loeb. The probabilities and reasonableness and natural flow of events, taking the transactions as a whole, lead us, as we have said, to the conclusion arrived at by the trial judge as to the defendant's having proved its plea of estoppel. The finding and conclusion of the court in cases tried by a judge without a jury stands as the verdict of the jury, and the credibility of the evidence is for the trial court and can only be examined with a view of determining whether or not the judgment is supported by the evidence, notwithstanding the statute requires this court to review the conclusions and judgments of the trial court and render such judgment as may seem right and proper.—*Milner v. State,* 150 Ala. 95; 43 South. 194; *Montgomery Lodge v. Massie,* 159 Ala. 437, 49 South. 231; *Minchener v. Robinson,* 169 Ala. 472, 53 South. 749; *Kelly v. Anniston,* 164 Ala. 631, 51 South. 415; *City of Ensley v. Smith,* 165 Ala. 387, 51 South. 343;

*McIntyre Lumber & Export Co. v. Jackson Co.,* 165 Ala. 268, 51 South. 767, 138 Am. St. Rep. 66; *Woodrow v. Hawving,* 105 Ala. 240, 16 South. 720.

Counsel for appellant make the argument in brief that as Battle testified he told the Mutual Warehouse Company, when applying for the loan, that the Winter-Loeb Grocery Company would release the mortgage lien held by it, and that as McNeil testified he subsequently inquired of the Winter-Loeb Grocery Company through its manager to know if it held a claim, this inconsistency tends to materially weaken the proof supporting the plea is estoppel. We do not think so. It may be a question under all of the evidence whether the plaintiff, acting through one of its managers, informed the agent of the defendant over the telephone that the plaintiff held no claim, or that it would not assert any claim held by it; but it is not material, as affecting the rights of the defendant, whether the plaintiff, through its manager, stated to defendant's agent that it held no claim on the property or that it would waive its lien in defendant's favor. McNeil testified that he asked Winter if the plaintiff had any claim, and that Winter replied that it did not. Battle testified that the plaintiff did not include the property in question, but that it had been inserted without his knowledge after its execution and delivery, but that the other mortgage held by the plaintiff as transferee of the bank covered this property, and that Loeb agreed to waive the lien on his property in favor of any one whom Battle could get to advance him for the current year. Under these circumstances, some inconsistency might naturally arise as to whether the plaintiff waived a lien or asserted the nonexistence of a claim; but if it is clear—and we think it is—that plaintiff denied holding a claim or agreed to waive any lien it then had in favor of the defendant, and the defendant

relied and acted upon this statement and parted with a valuable consideration on the faith of the representation, then the plaintiff would be estopped from setting up its prior claim against defendant without regard to whether the particular representation was that it had no claim or would waive its rights under the claim held by it.

"If one having an incumbrance or security upon an estate conceals his interest, and thereby enables the owner to procure an additional advance upon it, he must be postponed to the second incumbrance."—1 Story, Eq. § 390; *Chapman v. Hamilton,* 19 Ala. 124; *Ashurst v. Ashurst,* 119 Ala. 219;, 24 South. 760; *Harris v. Building & Loan Co.* 122 Ala. 545, 25 South. 200.

The contention of the appellant that the conversation had by McNeil with Winter is not binding upon the corporation, in that Winter was not shown to have been acting within the line or scope of his authority and that his authority to bind the company by the statement testified to by McNeil as having been made by him is not shown to have been within the scope and authority of Winter as one of the managers of the plaintiff, is without merit. No objection was made in the trial court to the statement of Winter as not being within the scope and authority of his agency, nor did Winter or Loeb, both of whom testified subsequent to McNeil's having testified to the telephone conversation, in any way challenge or deny the right or authority of Winter to bind the plaintiff by making the statement credited to him by McNeil; but inferentially the authority was admitted by denying the statement without questioning the right to make it as within the line and scope of Winter's authority. The evidence shows that Winter was one of the managers of the plaintiff company; that McNeil, the secretary and treasurer of the defendant company, called up the place of business of the plaintiff; and that Winter, who was

[Murphey v. Farmers Union Warehouse Company.]

known to McNeil, answered the telephone, acting apparently, so far as the evidence in this case shows, directly in the line and scope of his authority as a general agent. It was not denied that Winter was one of the managers of the plaintiff company, and the acts of such an agent are binding upon the principal when he acts within the apparent scope of his authority, in the absence of knowledge on the part of the other persons to the contract of any limitation upon his powers.—*Alston v. Broadus Cotton Mills*, 152 Ala. 552, 44 South. 654; *Harris v. Am. Building & Loan Association*, 122 Ala. 545, 25 South. 200.

The question of the agent's authority to bind the company in the statement alleged to have been made was not an issue in the trial court, nor does that question seem to have been raised.

There is no error in the conclusion reached and judgment rendered by the trial court, and the case will be affirmed.

Affirmed.